UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


RAY SCOTT HEID, *et al.*,

      Plaintiffs,

  v.                                Civil Action 2:17-cv-650
                                     Chief Judge Algenon L. Marbley
                                     Magistrate Judge Chelsey M. Vascura

MARK HOOKS, *et al.*,

      Defendants.


## REPORT AND RECOMMENDATION

Plaintiffs, Ray Scott Heid and James E. Damron, state-prison inmates who are proceeding without the assistance of counsel, bring this action under 42 U.S.C. § 1983 against Defendants Mark Hooks and Jeffrey Howard, employees of the Ross Correctional Institution ("RCI").[1] This matter is before the undersigned for consideration of Defendants' Motion for Summary Judgment (ECF No. 39), Plaintiffs' Opposition thereto (ECF No. 46), and Defendants' Reply (ECF No. 49). For the reasons that follow, it is **RECOMMENDED** that Plaintiffs' claims for injunctive and declaratory relief be **DENIED AS MOOT** and that Defendants' Motion for Summary Judgment be **GRANTED** as to all remaining claims.

### I.    BACKGROUND

Plaintiffs allege that, during the time they were incarcerated at RCI, Defendants were deliberately indifferent to a substantial risk of serious physical harm related to their use of prison

---

[1] Although Defendant Mark Hooks was Warden of RCI at the time Plaintiffs filed their complaint, he is no longer employed at RCI. (Hooks Aff. ¶ 2, ECF No. 39-1.)

phones. According to Plaintiffs, inmates belonging to "black supremacist gangs" controlled five of the six phones in the cell block and limited white inmates' use to the remaining phone. (Compl. ¶ 12, ECF No. 9.) At the time the Complaint was filed, RCI's policies allowed inmates to access the phones twice each day, during time periods designated for out-of-cell recreation time (known at RCI as "dayroom"). (*Id.*, ¶ 13.) Plaintiffs' cell block was divided into two groups: "top range" and "bottom range." The top range and bottom range groups did not take dayroom at the same time. (*Id.*, ¶ 14.) At the time the complaint was filed, the top range group had significantly more inmates than the bottom range group. (*Id.*, ¶¶ 15–16.)

Plaintiffs allege that the gangs' control of the phones resulted in violence among white inmates attempting to use the one remaining phone. (*Id.*, ¶ 17.) Plaintiffs further allege that using a gang-controlled phone without permission would result in threats of violence, in the first instance, and, thereafter, in "(1) a direct attack; (2) a compelling position to engage in violence by ones [sic] own volition – either in a cell, laundry room, T.V. room, and so forth . . .; and (3) tell the correction officer . . . and be labelled a 'snitch'." (*Id.*, ¶ 22.) According to Plaintiffs, "these incidents" often resulted in open attacks by black inmates in the dayroom, with the intent that the victim is removed from the cell block for their own protection (a practice apparently referred to as "crashing"). (*Id.*, ¶ 23.) For their part, Defendants deny that tensions over the prison phones was a major source of inmate violence at RCI. (Defs.' Resps. to Pls.' Reqs. for Admis. No. 2, ECF No. 46, PAGEID #600, 607.)

It is undisputed that Plaintiffs expressed their concerns to Defendants on multiple occasions. On December 1, 2015, Damron sent a "kite" (a method for inmates to communicate with RCI staff) to each Defendant with a copy of a document titled "Notice of Proposal to Correct Phone Problem & Stem Violence." (Compl. Ex. 4–7, ECF No. 9, PAGEID #219–26.) A

Defendant (the record is not clear as to which) responded to each kite with the following: "Working on it." (*Id.*, PAGEID #220, 222.)  On December 14, 2015, Damron sent another kite to each Defendant.  (Compl. Ex. 8–9, ECF No. 9, PAGEID #227–30.)  Howard again responded with "working on it." (*Id.*)  Hooks responded as follows: "Damron—I have your proposal and am looking into the feasibility of implementation in total or part." (*Id.*)  On December 16, 2015, Heid sent a similar kite to Hooks.  (Compl. Ex. 10, ECF No. 9, PAGEID #231–32.)  A response written on the kite states "Warden Hooks is reviewing it to see if it can be implimented [*sic*] or use part of your suggestion." (*Id.*)

On March 23, 2016, Heid sent a kite to non-party Institutional Inspector Diehl, which states:

> Mr. Diehl,
>
> Having reflected on and considered your benevolent offer to help alleviate some of the issues regarding the phone, I must respectfully decline the move.
>
> While on the surface it's [*sic*] appeal seems to help, yet the wake of such a decision . . . will only be perceived in a negative light and manifest direct problems with those directly or indirectly related to the move.  Making me a targeted object as the cause of another's inconvenience(s).  Thereby making more direct problems instead of actually helping.
>
> A more direct approach by the Institution to delineate white/black phones is the most feasible conclusion in eradicating the systematic racial discrimination being carried out by those of the black race.
>
> From an experienced perspective, this seems to be the only definitive resolution unless the institution installs phones in every cell.  To stand by and do nothing is to permit the racial discrimination to continue to flourish within the institution.
>
> Respectfully submitted,
>
> Mr. Ray Scott Heid

(Compl. Ex. 13, ECF No. 9, PAGEID #235–36.)  On April 1, 2016, non-party Diehl responded to Heid's kite of the previous week.  (Compl. Ex. 36, ECF No. 9, PAGEID #274.)  In his

3

response, Diehl acknowledges that Heid's grievance "has merit." (*Id.*) He further notes that, in response to the situation, RCI administration took the following steps: a phone list was implemented at Heid's suggestion; a committee was formed to address the issue and consider resolution of it; the institution was approved to procure additional phones and was working with Global Tel Link ("GTL") to do so; and Heid was offered a relocation to the bottom range, which experienced less phone congestion by virtue of having fewer inmates. (*Id.*) Plaintiffs concede that each of these responsive actions was taken. (*See, e.g.*, Compl. Ex. 13, ECF No. 9, PAGEID #236; Compl. Ex. 14, ECF No. 9, PAGEID #237; Pls.' Mem. in Opp. ¶¶ 11, 16–17, 37–39, ECF No. 46; Defs.' Resps. to Pls.' Interrog. and Reqs. for Admis., ECF No. 46, PAGEID #591–614.)

Plaintiffs detail one specific act of violence they allege stemmed from control of prison phones by gangs. On July 10, 2016, Damron was engaged in a physical altercation with another inmate, Brandon Chukes. (Damron Dec. ¶ 6, ECF No. 46, PAGEID #583.) According to Plaintiffs, the altercation broke out after Damron attempted to use a prison phone to call his family. (*Id.*) Chukes allegedly "pushed upon" Damron while he was using a phone to call his family and "attempted to pull the telephone out of [his] hand saying: 'That's a Crip . . . phone and you need to get off of it and don't make a scene.'" (*Id.*) Damron then "push[ed] [Chukes] up off of [him] with [his] forearm." (*Id.*) Damron was unable to make contact with his family, and so hung up the phone. (*Id.*) Damron alleges that Chukes then summoned him to the T.V. room. (*Id.*) Damron alleges he understood that Chukes' intention was to engage in a physical fight. (*Id.*) Damron "chose to go into the T.V. room to handle [his] business as the only real alternative to the confrontation and phone problem." (*Id.*) A fight broke out between Damron and Chukes, which was stopped by an RCI corrections officer. (Conduct Report, ECF No. 39-6.)

On July 18, 2016, Damron filed an Informal Complaint Resolution with Howard, reiterating his concerns over the phones. (Compl. Ex. 28, ECF No. 9, PAGEID #260.) Howard responded the following day: "Mr. Damron, In response to not doing anything about the phones, your allegation is false which can legally be proven. We are currently working with GTL to resolve this concern with not only 7H but the entire compound. We recognize the problem and it is not being ignored. Secondly, why didn't you advise the unit officer instead of fighting?" (*Id.*) On May 1, 2017, Damron sent a kite to Hooks. (Compl. Ex. 25, ECF No. 9, PAGEID #252–53.) In the kite, Damron asks about the status of tablet phones for distribution to RCI inmates, referencing a conversation that had taken place the previous August about their forthcoming arrival. (*Id.*) Hooks responded: "[Another Ohio state prison] is the pilot institution instead of RCI. Not in our control." (*Id.*) On May 24, 2017, Damron sent a similar kite to Howard. (Compl. Ex. 26, ECF No. 9, PAGEID #254–55.) Howard responded: "Mr. Damron, This is a task we are working to resolve. Do you have phones that are currently not working? If so, please contact unit staff to have resolved." (*Id.*) GTL tablet phones were later distributed to all RCI inmates. (Pls.' Mem. in Opp. ¶ 16–17, ECF No. 46.)

Plaintiffs have each since been relocated to other Ohio state correctional institutions. (Offender Movement History, ECF No. 39-3, 39-4.)

Plaintiffs filed their complaint on July 26, 2017. (ECF No. 1.) After initial screening under 28 U.S.C. § 1915A, the Court dismissed Plaintiffs' Fourteenth Amendment claim and class action allegation. (ECF No. 12.) Subsequently, the Court dismissed Plaintiffs' claims for monetary damages against Defendants in their official capacities. (ECF No. 33.) Plaintiffs' only remaining claim is based on allegations that the Defendants were deliberately indifferent to a

serious risk of harm against Plaintiffs, in violation of the Eighth Amendment. Defendant has moved for summary judgment.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

### A. Plaintiffs' claims for injunctive and declaratory relief are moot.

Plaintiffs' claims for injunctive and declaratory relief should be addressed as an initial matter. When an inmate files suit against prison officials at the institution of his incarceration based upon those officials' wrongful conduct seeking injunctive and declaratory relief, and that inmate is subsequently transferred or released, courts routinely dismiss the injunctive and declaratory relief claims as moot. *Sossamon v. Texas*, 563 U.S. 277, 304 (2011) (citations omitted) ("A number of . . . suits seeking injunctive relief have been dismissed as moot because the plaintiff was transferred from the institution where the alleged violation took place prior to adjudication on the merits."); *see also, e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (concluding that inmate's claims for declaratory and injunctive relief were rendered moot upon inmate's transfer from the prison about which he complained); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (finding inmate's request for injunctive relief mooted upon transfer from relevant prison); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993) (same). This is because an inmate's transfer or release ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger v. Cuyahoga Cty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993); *Fredette v. Hemingway*, 65 F. App'x 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested"). "There is . . . an exception to the mootness doctrine for claims that are capable of repetition, yet evade review." *Fredette*, 65 F. App'x at 931 (citation omitted). This narrow exception is limited to situations in which "the challenged action was in its duration too short to be fully litigated prior to its cessation or

7

expiration" and "there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (internal quotation marks and citations omitted).

Applying the foregoing principles to the instant case, the undersigned concludes that Plaintiffs' claims for injunctive and declaratory relief are moot. Because Plaintiffs were transferred to other correctional institutions, Defendants can no longer commit the alleged constitutional violations against them. This Court does not have jurisdiction to accord Plaintiffs with prospective relief that has no effect or impact on the parties involved in this action. In addition, the exception to the mootness doctrine does not apply in this case because RCI has made GTL tablet phones available to all inmates. Therefore, even if one of the Plaintiffs were transferred back to RCI, there is no reasonable expectation that he would be subjected to the alleged constitutional violations again. Accordingly, it is **RECOMMENDED** that Plaintiffs' claims for injunctive and declaratory relief be **DENIED AS MOOT**.

**B.      Plaintiffs' Eighth Amendment claims lack merit.**

Because Plaintiffs' claims for injunctive and declaratory relief are moot, the only claims remaining in Plaintiffs' Complaint are their damages claims for violation of the Eighth Amendment. For the following reasons, Defendants are entitled to summary judgment on these claims.

      **1.      Eighth Amendment Standards**

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from attack by other inmates, a plaintiff must present evidence showing that the defendants' conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837. *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

Deliberate indifference includes both objective and subjective elements. *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The objective element requires the harm to be "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834). Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind." *Id.* This requires that prison officials know that inmates face a substantial risk of harm and "disregard[ ] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Reilly v. Vadlamudi*, 680 F.3d 617, 623–24 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. It is not enough that the official "should" have perceived a substantial risk, but did not. *Id.* Further, "prison officials who actually knew of substantial risk to inmate health or safety may be found free from [Eighth Amendment] liability if they responded reasonably to the risk, even if harm ultimately was not averted." *Id.* at 844.

  2. **Plaintiff Heid has not alleged a damages claim under the Eighth Amendment.**

As an initial matter, the undersigned notes that only Plaintiff Damron is alleged to have suffered any injury that might form the basis for an Eighth Amendment claim. Plaintiffs do not allege that Heid sustained any injury or suffered any assault as a result of the phone situation. Therefore, there is no basis for awarding damages to Heid under the Eighth Amendment. *See Wells v. Jefferson County Sheriff Dep't*, 159 F. Supp. 2d 1002, 1011 (6th Cir. 2001) ("Absent

any assault on him, [plaintiff's] Eighth Amendment failure-to-protect claim has no substance.") (citing *Wilson v. Yaklich*, 148 F.3d 596, 600–02 (6th Cir. 1998) ("However legitimate [the plaintiff's] fear may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.")). Plaintiffs concede as much. (Pls.' Mem. in Opp. ¶¶ 42–43, ECF No. 46; Pls.' Statement of Undisputed Facts, ECF No. 46, PAGEID #625.) Accordingly, to the extent Heid seeks damages, it is **RECOMMENDED** that summary judgment be **GRANTED** in Defendants' favor.

### 3. Defendants are entitled to summary judgment on Damron's Eighth Amendment claims.

Defendants make several arguments as to why they are entitled to summary judgment, including (1) Plaintiffs' claims fail on the merits because Defendants took reasonable measures to address Plaintiffs' concerns pertaining to phone access, (2) Plaintiff Damron's claims stemming from injuries sustained in the altercation with inmate Chukes fail on the merits because Damron did not make Defendants aware of any specific threat by Chukes and because Damron voluntarily entered into the altercation with Chukes, (3) Plaintiffs' claims against Defendant Hooks are not actionable under § 1983, and (4) Defendants are entitled to qualified immunity.[2] The undersigned will consider each argument in turn.

#### a. Plaintiffs failed to establish that Defendants' response to the risk of harm resulting from access to the prison phones was unreasonable.

For summary judgment purposes, the undersigned takes as true Plaintiffs' allegations that the situation regarding the prison phones constituted a substantial risk of serious harm to

---

[2] Plaintiffs move to strike various portions of Defendants' summary judgment evidence. (Pls.' Mot. to Strike, ECF No. 46, PAGEID #627–37.) The undersigned does not find Plaintiffs' arguments persuasive and declines to strike Defendants' evidence.

Plaintiffs and that Defendants had requisite knowledge of such risk. Nonetheless, Plaintiffs fail to allege behavior that amounts to deliberate indifference on the part of Defendants. Indeed, Plaintiffs acknowledge a number of actions taken by Defendants to alleviate their concerns over the prison phones. Namely, (1) a committee was established to consider appropriate solutions to the situation; (2) a phone list system (one of the solutions suggested by Plaintiffs themselves) was piloted; (3) at least one of the Plaintiffs was offered a housing relocation;[3] and (4) GTL tablet phones were distributed to every inmate.[4] As noted above, prison officials who have knowledge of a substantial risk of harm may be found free from Eighth Amendment liability if they respond reasonably to the risk, even if their response is ultimately unsuccessful at averting the harm. *Farmer*, 511 U.S. at 844. In this case, Plaintiffs have failed to establish that Defendants' actions taken in response to Plaintiffs' complaints were unreasonable. *See Durham v. Jeffreys*, No. 1:13-cv-226, 2019 WL 3754012, at *4–5 (S.D. Ohio, Aug. 8, 2019) (granting summary judgment to defendant on Eighth Amendment claim for failure to protect against an attack by the plaintiff's cellmate where the record established that defendant offered to move plaintiff to segregation and eventually placed plaintiff with different cellmate) (quoting *Conley v. Warden*, No. 1:07-cv737, 2008 WL 4657084, at *5 (S.D. Ohio, Oct. 21, 2008) ("While the decision is not the one which Plaintiff prefers, we find no evidence that prison administrators are ignoring his complaints or are being deliberately indifferent to a known risk.")). *See also Knight*

---

[3] It is unclear from the record whether Plaintiff Damron was also offered a housing relocation, as Defendants suggest.

[4] Defendants also assert that new phones were installed (Howard Resp. to Pls.' Interrog. No. 3, ECF No. 46, PAGEID #596; Hooks Resp. to Pls.' Reqs. for Admis. No. 10, ECF No. 46, PAGEID #602) and that the phone banks were relocated in order to abate congestion and stem violence over use of the phones. (Howard Aff. ¶ 9, ECF No. 39-2; Hooks Resp. to Pls.' Interrog. No. 3, ECF No. 46, PAGEID #593; Hooks Resp. to Pls.' Reqs. for Admis. No. 10, ECF No. 46, PAGEID #602.) However, Plaintiffs dispute the timing of these actions and that they were taken in response to the risk of which they complained.

11

*v. Gill*, 999 F.2d 1020, 1022 (6th Cir. 1993) (reversing district court's denial of summary judgment on Eighth Amendment claim for failure to protect against an attack by the plaintiff-appellee's cellmate in part because plaintiff-appellee refused protective supervision offered by defendant). The record makes clear that Plaintiffs had a very limited notion of what might constitute a reasonable solution to the prison phone issue, *i.e.*, designating certain phones available for use by white/black inmates in proportion to their percentage of the total inmate population. (*See, e.g.*, Compl. ¶¶ 49–50, ECF No. 9; Compl. Ex. 13, ECF No. 9, PAGEID #235–36; Pls.' Mem. in Opp. ¶ 40, ECF No. 46.) That Plaintiffs disagree with Defendants' chosen actions or find one or more of those actions to have been ineffective does not show, or even suggest, that Defendants were deliberately indifferent to the risk posed by tensions over the prison phones. *See Durham*, 2019 WL 3754012, at *7 ("Plaintiff's disagreement with the ultimate outcome and the manner in which [prison business] was conducted is insufficient to establish that [defendant] was deliberately indifferent to a known risk of harm."). *See also Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) (finding that "a difference of opinion between [an inmate] and [his] prison health care providers [or] a dispute over the adequacy of [his] treatment . . . does not amount to an Eighth Amendment claim" for deliberate indifference in the context of providing medical care) (internal citation omitted).

> **b. Defendants cannot be held liable under the Eighth Amendment for Plaintiff Damron's choice to engage in a physical fight with inmate Chukes.**

Further, the undersigned finds a noteworthy disconnect between Defendants' actions in response to Plaintiffs' complaints and Damron's injury. Damron admits that the injury for which he requests damages was sustained in a physical altercation that he entered into of his own volition. (Damron Dec.¶ 6, ECF No. 46, PAGEID #583.) Chukes engaged in aggressive, bullying behavior towards Damron at the phones and invited him to engage in a physical fight in

a separate room down the hall.  (*Id*.)  Damron chose to follow Chukes away from the phones, down the hall, and into the T.V. room to continue the confrontation.  (*Id*.)  Damron did not make a corrections officer or any member of RCI staff aware of the Chukes's threat against him.  Nor did Damron attempt to de-escalate the situation with Chukes.  To the contrary, Damron admits to engaging with Chukes in the T.V. room.  (*Id*.)  He now attempts to absolve himself of responsibility for those choices, asserting he was a "victim of circumstance."  (*See, e.g.*, Compl. Ex. 28, ECF No. 9, PAGEID #260; Pls.' Mem. in Opp. ¶ 14, ECF No. 46.)  Damron's characterization of the violence giving rise to his injury is not incompatible with his simultaneous admission that he voluntarily engaged in that violence.  There is a distinction between the type of attack the Eighth Amendment seeks to avoid (*see, e.g., Farmer*, 511 U.S. at 833–34 ("gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective") (internal quotations and citations omitted)) and a fist fight among willing participants.  "It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  Damron makes no allegation that his decision to fight Chukes was the result of Defendants' deliberate indifference to a known, substantial risk of serious harm.  Damron had time and space between the confrontation at the phones and the confrontation in the T.V. room to avoid injury.  Instead, he chose to engage in the violence that lead to his injury.  Defendants cannot be held responsible for Damron's own decision to violently engage with Chukes.

In sum, based on the evidence presented, the undersigned finds that a reasonable jury could not return a verdict in favor of Plaintiff Damron, and Defendants are entitled to judgment as a matter of law.  Consequently, it is unnecessary to consider Defendants' alternative bases in

favor of summary judgment. Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiffs' claims for damages.

## IV. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiffs' claims for injunctive and declaratory relief be **DENIED AS MOOT** and that Defendants' Motion for Summary Judgment (ECF No. 39) be **GRANTED** as to all remaining claims.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE