**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAY SCOTT HEID, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No. 2:17-CV-650** |
| **v.** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **MARK HOOKS, et al.,** | : | |
| | : | **Magistrate Judge Chelsey M. Vascura** |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on Magistrate Judge Vascura's Report and Recommendation recommending that Plaintiffs' Ray Scott Heid and James Damron claims for injunctive and declaratory relief be **DENIED AS MOOT** and that Defendants' Motion for Summary Judgment be **GRANTED** as to all remaining claims. (ECF No. 50). Plaintiffs filed an objection to this report and recommendation. (ECF No. 51). For the reasons set forth below, this Court **ADOPTS** the Report and Recommendation in its entirety based on an independent analysis of the claims therein. Plaintiffs' claims for injunctive and declaratory relief are **DENIED AS MOOT** and Defendants' Motion for Summary Judgment is **GRANTED**.

## I.    BACKGROUND

Plaintiffs are inmates at Ohio correctional facilities. Plaintiff Ray Scott Heid is incarcerated at Lebanon Correctional Institution and Plaintiff James Damron is incarcerated at Trumbull Correctional Institute. Previously, however, both were incarcerated at the Ross Correctional Institution ("RCI"), where they allege prison officials violated their rights under the Eighth Amendment, due to Defendants' deliberate indifference to a substantial risk of serious physical harm related to their access to prison phones.

1

Plaintiffs' housing unit consisted of six phones; inmates had access to the phones twice a day during their out-of-cell recreation time in the dayroom. (ECF No. 9 at ¶ 13). Plaintiffs allege that five of the six phones were controlled by inmates who belonged to "black supremacist gangs," which limited white inmates to one phone. *Id.* at ¶12. Plaintiffs' cell block was divided into two groups: "top range" and "bottom range." The top range and bottom range groups did not take dayroom at the same time. *Id*. at ¶ 14. At the time the complaint was filed, the top range group had significantly more inmates than the bottom range group. *Id*. at ¶¶ 15–16.

Plaintiffs allege that the gangs' control of the phones resulted in violence among white inmates attempting to use the one remaining phone. *Id*., ¶ 17. Plaintiffs further allege that using a gang-controlled phone without permission would result in threats of violence, in the first instance, and, thereafter, in: "(1) a direct attack; (2) a compelling position to engage in violence by ones [sic] own volition – either in a cell, laundry room, T.V. room, and so forth . . .; and (3) tell the correction officer . . . and be labelled a 'snitch'." *Id*. at ¶ 22. According to Plaintiffs, "these incidents" often resulted in open attacks by black inmates in the dayroom, with the intent that the victim is removed from the cell block for their own protection (a practice apparently referred to as "crashing"). *Id*. at ¶ 23. For their part, Defendants deny that tensions over the prison phones were a major source of inmate violence at RCI. (ECF No. 46 at PAGEID #600, 607).

Plaintiffs expressed their concerns regarding the phones to Defendants, through "kites" (a method for inmates to communicate with RCI staff), on numerous occasions from December 1, 2015 to March 23, 2016. (ECF No. 9, PAGEID #219-30, 235-36). After each notice, Plaintiffs were informed that Defendants were working to mitigate the phone issue. (*Id.* at PAGEID #220, 222, 232).

Judge Vascura found that on April 1, 2016, non-party Diehl responded to a kite received by Plaintiff Heid a week prior regarding the phone issue. (Compl. Ex. 36, *Id.*, PAGEID #274.) In his response, Diehl acknowledges that RCI administration took the following steps: a phone list was implemented at Heid's suggestion; a committee was formed to address the issue and consider resolution of it; the institution was approved to procure additional phones and was working with Global Tel Link ("GTL") to do so; and Heid was offered a relocation to the bottom range, which experienced less phone congestion by virtue of having fewer inmates. *Id.* Plaintiffs concede that each of these responsive actions was taken. (*See, e.g.*, Compl. Ex. 13, ECF No. 9, PAGEID #236; Compl. Ex. 14, ECF No. 9, PAGEID #237; Pls.' Mem. in Opp. ¶¶ 11, 16–17, 37–39, ECF No. 46; Defs.' Resps. to Pls.' Interrog. and Reqs. for Admis., ECF No. 46, PAGEID #591–614). Plaintiffs allege in their objection that this response was not related to Heid's kite and instead was related to Plaintiff Heid's Notification of Grievance filed on March 7, 2016 and was the conclusion of an investigation into Plaintiff Heid's claim. (ECF No. 51 at 2).

On July 10, 2016, Damron engaged in a fist fight that arose from his use of a phone that was allegedly claimed by inmates in the "black supremacist gang." (ECF No. 46 at PAGEID #583). While using the phone, Damron was approached by inmate, Brandon Chukes, and was told that he needed to get off of the phone. *Id.* Damron shoved Chukes at the phone, afterwards Chukes summoned Damron to the TV room adjacent to the phones to fight. *Id.* Aware of Chukes' intention to engage in a fight, Damron went into the TV room to carry out the physical altercation. *Id.*

On July 18, 2016, Damron filed an Informal Complaint Resolution with Howard, reiterating his concerns over the phones. (Compl. Ex. 28, ECF No. 9, PAGEID #260.) Howard responded that RCI was not responsible for Damron voluntarily engaging in a fight with Chukes but was continuing to find a solution to the phone problem. *Id.* GTL tablet phones were later

distributed to all RCI inmates in 2017. (ECF No. 51, PAGEID # 675). Plaintiffs have each since been relocated to other Ohio state correctional institutions. (ECF No. 39-3, 39-4.)

Plaintiffs filed their complaint on July 26, 2017. (ECF No. 1.) After initial screening under 28 U.S.C. § 1915A, the Court dismissed Plaintiffs' Fourteenth Amendment claim and class action allegation. (ECF No. 12). Subsequently, the Court dismissed Plaintiffs' claims for monetary damages against Defendants in their official capacities. (ECF No. 33). Plaintiffs' only remaining claim is based on allegations that the Defendants were deliberately indifferent to a serious risk of harm against Plaintiffs, in violation of the Eighth Amendment. Defendant has moved for summary judgment. (ECF No. 39). Magistrate Judge Vascura Recommended that Defendants' Motion for Summary Judgment be **GRANTED**. (ECF No. 50). Plaintiffs objected to Judge Vascura's Report and Recommendation in a filing received by the Court on February 21, 2020. (ECF No. 51). Defendants responded to this objection, taking issue with it as being untimely filed. (ECF No. 52). Plaintiffs responded noting that they timely submitted their objection by giving it to prison authorities for mailing on February 3, 2020. (ECF No. 53).[1]

## II.    STANDARD OF REVIEW

When objections to a Magistrate Judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the Magistrate Judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the Magistrate Judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).  Because Defendant has

---

[1] Plaintiffs' objection was filed upon delivery to prison officials on February 3, 2020, thus, Plaintiffs' objection is considered a timely filing. *See Houston v. Lack*, 487 U.S. 266, 269-72 (1988) (holding that an inmate acting without counsel's aid documents are considered filed upon delivery to prison officials).

filed objections to the Report and Recommendation, the Court reviews the recommended disposition de novo.

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### III. ANALYSIS

Plaintiffs have three objections to Judge Vascura's report and recommendation. Their first objection relates to when their claims for injunctive and declaratory relief became moot. They do not contest that those claims are moot but do object to Judge Vascura's finding as to when those claims became moot. Plaintiffs' second objection is to Judge Vascura's recommendation that summary judgment be granted as to Plaintiff Damron's Eighth Amendment claim. (ECF No. 51 at 8). Finally, Plaintiffs object to Judge Vascura's decision to deny Plaintiffs' Motion to Strike. This Court will address each of these objections in turn, below.

5

Plaintiffs did not object to Judge Vascura's recommendation that Defendant's motion for summary judgment be **GRANTED** on the damages claim by Plaintiff Heid. The Report and Recommendation specifically advised the parties that the failure to object results in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. (ECF No. 50 at 14). Accordingly, this Court **ADOPTS** Judge Vascura's report and recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff Heid's claim for damages.

### A. Plaintiffs' Claims for Injunctive and Declaratory Relief are Moot.

Plaintiffs' first objection relates to when their claims were mooted. Plaintiffs concede that their injunctive and declaratory claims are now moot but argue that their claims did not become moot when they were transferred from RCI in 2018 and 2019, but instead when they were provided with GTL tablets in October 2017. (ECF No. 51 at 6-7). Plaintiffs argue that the fact that their claims were mooted by the provision of GTL tablets is a "'judicially sanctioned change in the legal relationship of the parties'" that is the "equivalent to providing full injunctive relief" which in turn entitles them to a *sua sponte* summary judgment finding in their favor. *Id*. at 7-8.

Plaintiffs, however, misunderstand the consequences of Judge Vascura's finding that their claims are moot. The determination that a claim is moot is not a finding in favor of a defendant nor a finding in favor of a plaintiff. It is only a determination that there is no live issue for the court to determine. Article III, § 2 of the United States Constitution vests federal courts with jurisdiction to address "actual cases and controversies." *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (citing U.S. CONST. art III, § 2). Federal courts are prohibited from rendering decisions that "do not affect the rights of the

6

litigants." *Id.* (citing *Southwest Williamson County Cmty. Assoc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)). This is broadly known as justiciability doctrine and encompasses the concepts of mootness and ripeness. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *See Cleveland Branch, N.A.A.C.P. v. City of Parma, OH,* 263 F.3d 513, 530 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). In essence, the mootness doctrine prohibits federal courts from hearing cases which, due to changed circumstances, can no longer impact the interests of litigants. *See DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Plaintiffs do not dispute that their claims are currently moot, and this Court agrees with Judge Vascura that both the distribution of the GTL tablet phones at RCI and the Plaintiffs' transfer to different correctional institutions does not allow Defendants to commit the alleged constitutional violations in the future. Accordingly, this court cannot grant summary judgment *sua sponte* in Plaintiffs' favor. Even if their claims were not moot, the Sixth Circuit disfavors *sua sponte* grants of summary judgement because it poses notice issues.[2] Accordingly, this court **ADOPTS** Judge Vascura's report and recommendation and determines that that Plaintiff's claims for injunctive and declaratory relief are **DENIED AS MOOT**.

---

[2] *See Delphi Automotiove Systems, LLC. V. United Plastics, Inc.*, 418 F. App'x 374, 379 (6th Cir. 2011) (stating that a *sua sponte* grant of summary judgment may be entered only "in certain limited circumstances so long as the losing party was on notice that the nonmoving party had to come forward with all of [its] evidence").  The district court must "afford the party against whom *sua sponte* summary judgment is to be entered ten-days' notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984) (citing *Kistner v. Califano*, 579 F.2d 1004 (6th Cir. 1978)). In this case, Judge Vascura's report and recommendation would not constitute adequate notice because there was no indication to Defendants that summary judgment was imminent. See *Lucas v. Dept. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (holding that a magistrate judge's R&R was not sufficient notice to a party that it was at risk of summary judgment).

### B.  Plaintiff Damron's Eighth Amendment Claim

As to Plaintiff Damron's Eighth Amendment claim, Plaintiffs' primary objection is that Judge Vascura "misinterpreted the subjective test for deliberate indifference and the rules for summary judgment … by accepting the defendants' contradictory statements as true and drawing the conclusion that defendants' actions were reasonable." (ECF No. 51 at 15). Essentially, Plaintiffs argue that a reasonable jury could find that Defendants' responses to Plaintiffs' complaints were not reasonable measures to protect Plaintiffs' safety under the circumstances. *Id.*

To establish an Eighth Amendment violation, an inmate must show that they experienced a substantial risk of being harmed and that the defendant displayed deliberate indifference to that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L.ED.2d 251 (1976); *Wilson v. Seiter* 501 U.S. 294, 111 S. Ct. 2321, 115 L.ED.2d 271 (1991)). This test has both a subjective and an objective component. Objectively, the substantial risk must be "sufficiently serious." *Farmer*, 511 U.S. at 834. Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference." *Morgan v. Lamneck*, No. 2:09-CV-218, 2011 WL 1114415, at *4 (S.D. Ohio Mar. 24, 2011) The subjective component of deliberate indifference requires the inmate to show that the prison official "(1) subjectively perceived facts from which to infer substantial risk to the prisoner, (2) did in fact draw the inference, and (3) then disregarded that risk." *Arflack v. County of Henderson, Kentucky*, 412 Fed. App'x. 829, 832 (6th Cir. 2011) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). Further, "prison officials who actually knew of substantial risk to inmate health or safety may be found free from [Eighth Amendment] liability if they responded reasonably to the risk, even if harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Plaintiffs argue that a jury could find that the various actions taken by Defendants to address Plaintiffs' complaints about the telephones were inadequate and that a jury could find that their suggested remedies (e.g. "racially balanced phones") would have been reasonable. (ECF No. 51 at 15, 16). Plaintiffs further argue that they need not "demonstrate Defendants' deliberate indifference to [Damron's] safety." *Id.* at 15.

To survive summary judgment, however, Plaintiffs must show that Defendants disregarded a risk of harm to Plaintiff Damron, not that Defendants' actions were inadequate. See *Arflack v. County of Henderson, Kentucky*, 412 Fed. App'x. 829, 832 (holding that to survive a motion for summary judgment, the plaintiff must allege facts that, if true, show that the prison officials (1) subjectively perceived facts from which to infer substantial risk to the prisoner, (2) did in fact draw the inference, and (3) then disregarded that risk.") (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

In this case, Plaintiffs do not deny that Defendants implemented tactics to mitigate the risk of harm to Plaintiffs, they instead argue that these measures were inadequate. The measures taken by Defendants to address Plaintiffs' complaints include: (1) establishing a committee to consider appropriate solutions to the phone problem; (2) a phone list system (one of the solutions suggested by Plaintiffs); (3) distributing GTL tablet phones to every inmate (4) the addition of phones to the block. (ECF No. 50 at 11). In their objection, Plaintiffs challenge the adequacy, efficiency, and timeliness of each of these actions. (ECF No. 51 at 9-13). As Judge Vascura determined, however, Plaintiffs point to no evidence indicating that Defendants were deliberately indifferent to a risk of harm to Plaintiffs.

The Sixth Circuit requires evidence of an obdurate or wanton state of mind, not mere "inadvertence or good faith error." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (noting that

9

while the existence of a "long duration of a cruel prison condition may make it easier to establish knowledge and thus intent on the part of prison officials … the existence of cruel prison conditions does not cause the intent requirement to 'evaporate.'"). Where a prison official reacts to a risk of harm posed to an inmate, a Court is not to focus on what the defendant "could have done differently, but whether [the defendant's] response was *reasonable*." *Mangum v. Repp*, 674 Fed. Appx. 531, 540 (6th Cir. 2017) (determining that even viewing the facts in the light most favorable to plaintiff, where the challenge is to the sufficiency of a defendant's good faith attempts at a remedy, that attack "sounds in negligence, not deliberate indifference"). The Sixth Circuit does not require that "prison officials take every possible step to address a serious risk of harm" and, in fact, requires courts to "take into account the "'constraints facing the official[s].'" *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020); *Conley v. Warden*, 1:07CV737, 2008 WL 4657084, at *5 (S.D. Ohio Oct. 21, 2008) (noting that where prison officials undertake a course of actions to prevent harm to an inmate, they "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

The evidence Plaintiffs point to indicates that Defendants reasonably addressed Plaintiffs' complaints as to the telephone issue. Plaintiffs' disapproval of Defendant's solutions or the effectiveness of their actions is not evidence that Defendants were deliberately indifferent. *See Conley v. Warden*, 1:07CV737, 2008 WL 4657084, at *5 (S.D. Ohio Oct. 21, 2008) (dismissing plaintiff's eighth amendment claim for deliberate indifference to safety where defendants sent plaintiff's claims to committee which considered the claim and issued a decision, noting "[w]hile the decision is not the one which Plaintiff prefers, we find no evidence that prison administrators are ignoring his complaints or are being deliberately indifferent to a known risk"); *Durham*, 2019

10

WL 3754012, at *7 ("Plaintiff's disagreement with the ultimate outcome and the manner in which [prison business] was conducted is insufficient to establish that [defendant] was deliberately indifferent to a known risk of harm."); *c.f., Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) (finding that "a difference of opinion between [an inmate] and [his] prison health care providers [or] a dispute over the adequacy of [his] treatment . . . does not amount to an Eighth Amendment claim" for deliberate indifference in the context of providing medical care) (internal citation omitted).

Plaintiffs further object to Judge Vascura's alternate finding that Defendants are not liable under the Eighth Amendment for Damron's injuries sustained as a result of his decision to engage in a physical fight with inmate Chukes. (ECF No. 51 at 13). Plaintiffs contend that Damron and Chukes' physical altercation was a direct result of Defendants' deliberate indifference. *Id.* Plaintiffs also dispute Judge Vascura's finding that Damron followed Chukes "down a hall" to engage in the physical altercation, instead Plaintiffs insist that the altercation occurred in the TV room which was adjacent to the phone Damron attempted to use. *Id.* This detail, however, has no effect on the fact that Plaintiff Damron made the decision to be involved in the fist fight that lead to his injury.

The Sixth Circuit recognizes that "[i]mplicit in [the deliberate indifference] standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998). While the Eighth Amendment imposes on prison officials a general "duty to protect prisoners from violence at the hands of other prisoners," that duty does not extend to situations where an inmate chooses to engage in a fight. *Farmer*, 511 U.S at 833. Here, Defendants cannot be held liable for

the injuries that Damron sustained during the altercation because Damron's injuries were the product of his own decision to engage in the fight as opposed to an act or omission by Defendants. *See Farmer*, 511 U.S. at 834 (noting that "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."). Damron was a willing participant in the altercation. Although Damron contends that he was a victim of circumstance, he admits that he pushed Chukes while using the phone and then met Chukes in the T.V. room to further engage in a fight with him. (ECF No. 46 at PAGEID #583). Damron did not make any prison officials aware of the threat Chukes posed to him and did not attempt to deescalate the situation. Thus, Defendants did not cause the injuries that Plaintiff Damron sustained through their alleged deliberate indifference.

For the reasons stated above, this Court **OVERRULES** Plaintiffs' Objections to Judge Vascura's Report and Recommendation. Based on an independent analysis of the claims herein, this Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff Damron's claims for damages.

### C. Plaintiffs' Motion to Strike Defendants' Summary Judgment Evidence

Plaintiffs also object to Judge Vascura's decision to deny their motion to strike affidavits that Defendants attached to their motion for summary judgment. (ECF No. 51 at 17). Plaintiffs argue that Defendants are "liars and have committed perjury" by offering inconsistent statements. *Id*.

Judge Vascura's decision to deny the motion to strike was a decision on a non-dispositive matter. When an objection is lodged to a magistrate judge's decision on a non-dispositive matter, the magistrate judge's decision will be reversed only if it is "clearly erroneous or is contrary to the law." Fed. R. Civ. P. 72(a); 28 U.S.C § 636(b)(1)(A). A magistrate judge's factual findings are

12

reviewed pursuant to the "clearly erroneous" standard, "while her legal conclusions will be reviewed under the more lenient 'contrary to law' standard." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994). A factual "finding is 'clearly erroneous' when the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. V. Hilltop Realty, Inc.*, 774 F.2d 135,140 (6th Cir. 1985). A legal conclusion is "contrary to law" when the conclusions contradict or ignore applicable precepts of law. *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-755, 2020 WL 1983069, at *2 (S.D. Ohio Apr. 27, 2020) (citing *Gandee*, 785 F. Supp. at 686).

In their motion to strike, Plaintiffs argued that various affidavits submitted by Defendants should be stricken because they were a sham created only for Defendants to receive summary judgment. (ECF No. 46, PAGEID #627–37.) Plaintiffs argue that Judge Vascura's denial of their motion to strike is wrong because through the affidavits, Defendants have given inconsistent and contradicting statements of facts, some while under oath, to receive a favorable legal outcome. (ECF No. 51 at 17 ¶ 38). Hearsay statements and statements not based on personal knowledge should be disregarded by a court when ruling on a summary judgment motion, however, courts should consider any remaining portions of an affidavit. *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 821 (S.D. Ohio 2004) (citing *Vass v. Riester & Thesmacher Co.*, 79 F.Supp.2d 853, 858 (N.D. Ohio 2000)). Because this Court can simply disregard inconsistent statements, Judge Vascura's determination that the statements should not be stricken is not contrary to law. Accordingly, Plaintiffs' objection to the denial of their motion to strike is **OVERRULED**.

## IV.    CONCLUSION

For the foregoing reasons, this Court **ADOPTS** Judge Vascura's Report (ECF No. 50) recommending that Plaintiffs' claims for injunctive and declaratory relief be **DENIED AS MOOT**

and that Defendants' Motion for Summary Judgment (ECF No. 39) be **GRANTED** as to all remaining claims. Based on independent analysis, Plaintiffs' claims for injunctive and declaratory relief are **DENIED AS MOOT** and Defendants' Motion for Summary Judgment is **GRANTED**.


**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  September 1, 2020**